IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CICELY JAMES, and | § | CIVIL ACTION. 4:15-cv-02745 |
| KEN RICE, Individually | § | |
| And on Behalf of All Others | § | |
| Similarly Situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | COLLECTIVE ACTION |
| | § | |
| PRIME CONSULTING GROUP, | § | |
| INC., KEITH BRUCE, CHIHUAHTHA | § | |
| COMPTON and VICTOR GREEN, | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TO THE HONORABLE JUDGE OF THIS COURT:**

Pursuant to Fed. R. Civ. P. 56, Prime Consulting Group, Inc., Keith Bruce, Chihuatha Compton, and Victor Green ("Defendants") move for partial summary judgment on the issue of the method of calculation of overtime damages, if any, and in support thereof respectfully show as follows:

**I.     INTRODUCTION**

1.      This case was filed by Plaintiffs alleging that Defendants have violated the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* (the "FLSA") and are entitled to damages for overtime wages that Defendants have failed to pay. Defendants deny that they have violated the FLSA and further deny that they will be liable to Plaintiffs for any overtime wages.

1

2.     Despite Defendants' position that they will not be liable for any unpaid overtime wages, Defendants file this Motion for Partial Summary Judgment (the "Motion") because it addresses an issue of paramount importance in this case. A ruling by the Court on Defendants' Motion would significantly increase both the efficiency of a trial on the merits and the likelihood of a settlement between the parties. This Motion seeks an order from the Court that the appropriate method of calculating overtime damages, if any, is to (1) divide the total amount of remuneration received by each Plaintiff in each workweek by the total number of hours worked in each workweek to determine each plaintiff's regular rate of pay; and (2) multiply the number of hours worked in excess of 40 hours in each workweek by one-half (1/2) of each Plaintiff's regular rate of pay to determine each Plaintiff's overtime damages.

3.     It is undisputed that in order to determine each Plaintiff's overtime damages, if any, the Court must first determine each Plaintiff's regular rate of pay and then use a multiple of the regular rate of pay to calculate each Plaintiff's overtime damages, if any. The dispute is how the regular rate of pay should be calculated and what multiple of the regular rate of pay should be used to calculate overtime damages.

4.     Plaintiffs allege incorrectly that regular rate of pay should be calculated by dividing the total amount of their remuneration in given workweek by 40 hours. Plaintiffs further allege that the regular rate of pay should be multiplied by 1.5 times to determine their overtime rate of pay, which overtime rate of pay should then be multiplied by all hours worked over 40 hours to yield each Plaintiff's overtime damages.

5.     Defendants allege that the regular rate of pay should be calculated by

dividing the total amount of a Plaintiff's remuneration in a given workweek by the total amount of hours worked. Defendants further allege that the regular rate of pay should be multiplied by .5 times rather than 1.5 times to determine their overtime rate of pay because the total remuneration received by the Plaintiffs was intended and understood by both Plaintiffs and Defendants to compensate Plaintiffs for every hour actually worked at their regular rate of pay. Because the Plaintiffs have already been compensated for every hour actually worked, they are only entitled to the overtime premium of .5 times their regular rate of pay for those hours worked in excess of 40 hours.

6.      The summary judgment evidence will show that there is no evidence to support Plaintiffs' position and all of the summary judgment evidence supports Defendants' position. More specifically, the summary judgment evidence will show that the Plaintiffs understood, knew and agreed that their total compensation was intended to cover all of the hours that they actually worked. Accordingly, there is no genuine issue of material facts as to the appropriate methodology to calculate each Plaintiff's regular rate of pay or unpaid overtime wages, if any.

## II.      FACTUAL BACKGROUND

7.      For all relevant time periods, Plaintiffs worked for Defendant Prime Consulting Group, Inc. ("Defendant Prime") as independent contractors as managers and/or trainers for Defendant Prime's insurance adjusters providing services for Defendant Prime's client, State Farm Mutual Insurance Company ("State Farm"). See Doc. 50, Plaintiffs' First Amended Individual and Collective Complaint under the Fair Labor Standards Act.

8.     Plaintiffs allege that they were misclassified and should have been classified as employees subject to the FLSA. See Doc. 50.

9.     Defendants deny any misclassification and therefore have no liability to Plaintiffs for unpaid overtime wages. See Doc. 53 and Doc. Doc. 59, Defendants' Answers.

10.     Plaintiffs allege that they are similarly situated with each other. See Doc. 50.

11.     Plaintiffs and others similarly situated as managers and/or trainers for Defendant Prime had experience in the insurance adjusting industry prior to working for Defendant Prime. More specifically, Plaintiffs and others similarly situated as managers and/or trainers for Defendant Prime had experience adjusting claims for State Farm including, but not limited to, knowledge of the usual and customary compensation structure for the industry. See Exhibit A, Excerpts from the deposition of Plaintiff Lucas Cabrera, deposition page 9, line 15 et seq.; See Exhibit "D", Excerpts from the deposition of Jarnae Gregory, deposition page 8, line 17.

12.     The usual and customary compensation structure in the insurance adjusting industry while working State Farm insurance claims was for workers to be classified as independent contractors and to be paid a daily rate of pay. It was also usual and customary that the daily rate of pay was intended to compensate the worker for all hours worked in a day, which was typically approximately 10 hours per day. See Exhibit A, Excerpts from the deposition of Plaintiff Lucas Cabrera, deposition page 12, line 4 et seq.

13.     Plaintiffs and others similarly situated as managers and/or trainers for

Defendant Prime knew that they were expected to be present to manage and/or train their insurance adjusters during all hours that their State Farm office was open for business. See Exhibit A, Excerpts from the deposition of Plaintiff Lucas Cabrera, deposition page 27, line 7 et seq.; See Exhibit B, Excerpts from the deposition of Amber Johnson, deposition page 6, line 8 et seq.; See Exhibit C, Excerpts from the deposition of Defendant Victor Green, deposition page 96, line 15 et seq.; See Exhibit D, Excerpts from the deposition of Jarnae Gregory, deposition page 7, line 3 et seq.; See Exhibit E.

14.     Plaintiffs and others similarly situated as managers and/or trainers knew that the State Farm offices were open for business for ten (10) hours per day, six (6) days per week. See Exhibit A, Excerpts from the deposition of Plaintiff Lucas Cabrera, deposition page 27, line 7 et seq.; See Exhibit B, Excerpts from the deposition of Amber Johnson, deposition page 6, line 8 et seq.; See Exhibit C, Excerpts from the deposition of Defendant Victor Green, deposition page 96, line 15 et seq.; See Exhibit D, Excerpts from the deposition of Jarnae Gregory, deposition page 7, line 3 et seq.; See Exhibit E.

15.     Plaintiffs and others similarly situated as managers and/or trainers for Defendant Prime agreed to perform their services for Defendant Prime for a daily rate specific to each Plaintiff. See Exhibit A, Excerpts from the deposition of Plaintiff Lucas Cabrera, deposition page 27, line 7 et seq.; See Exhibit B, Excerpts from the deposition of Amber Johnson, deposition page 6, line 8 et seq.; See Exhibit C, Excerpts from the deposition of Defendant Victor Green, deposition page 96, line 15 et seq.; See Exhibit D, Excerpts from the deposition of Jarnae Gregory, deposition page 7, line 3 et seq.; See Exhibit E.

16.     Plaintiffs and others similarly situated as managers and/or trainers for Defendant Prime understood, knew and agreed that their daily rate was intended to compensate them for ten (10) hours per day, six (6) days per week, or 60 hours per workweek. See Exhibit A, Excerpts from the deposition of Plaintiff Lucas Cabrera, deposition page 27, line 7 et seq.; See Exhibit B, Excerpts from the deposition of Amber Johnson, deposition page 6, line 8 et seq.; See Exhibit C, Excerpts from the deposition of Defendant Victor Green, deposition page 96, line 15 et seq.; See Exhibit D, Excerpts from the deposition of Jarnae Gregory, deposition page 7, line 3 et seq.; See Exhibit E.

17.     Plaintiffs and others similarly situated as managers and/or trainers for Defendant Prime knew that if they failed to work a full ten (10) hour day, they would only be compensated the percentage of their daily rate that corresponded with the percentage of the day that they worked. See Exhibit E, Plaintiff Cicely James' Response to Interrogatory No. 2.

## III.   SUMMARY JUDGMENT STANDARD

18.     Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to as a matter of law." Fed. R. Civ. P. 56(c). An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574,587 (1986). The burden of demonstrating that no genuine issue of material fact exists lies with the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

19.     After the Court determines that the movant has presented sufficient evidence that no genuine issue of material fact exists, the burden of production shifts to the party opposing summary judgment. *Matsushita Elec. Indus*, 475 U.S. at 586. The non-moving party must respond "by affidavit or as otherwise provided in th[e] rule, [and] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). this does not mean that "the non-moving party must produce evidence that would be admissible at trial," *Celotex*, 477 U.S. at 324. But it does force the non-moving party "to [go] beyond the pleadings and by [his] own interrogatories… designate 'specific facts showing there is a genuine issue for trial.'" Fed. R. Civ. P. 56(e); *Id.*

## IV.     SUMMARY JUDGMENT EVIDENCE

20.     Defendants rely upon the following summary judgment evidence:

a.      All pleadings and discovery on file by any party in this suit.

b.      Exhibit A: Excerpts from the deposition of Plaintiff Lucas Cabrera

c.      Exhibit B: Excerpts from the deposition of Amber Johnson

d.      Exhibit C: Excerpts from the deposition of Defendant Victor Green

e.      Exhibit D: Excerpts from the deposition of Jarnae Gregory

f.      Exhibit E: Letter from Defendant Victor Green to Plaintiff Lucas Cabrera with hand-written note from Plaintiff Lucas Cabrera

g.      Exhibit F: Objections, Assertions of Privilege and Responses to Defendant Prime Consulting Group, Inc.'s First Set of Interrogatories to Plaintiff Cicely James

## V.     SUMMARY JUDGMENT GROUNDS

21.     Defendants move for summary judgment on the issue of the method of calculation of damages as follows:

    a.     That Plaintiffs' regular rate of pay be calculated by dividing each Plaintiff's actual total weekly remuneration received by their actual number of hours worked.

    b.     That the appropriate methodology to calculate overtime damages due to Plaintiffs, if any, is one-half of each Plaintiff's regular rate of pay multiplied by the hours worked in excess of 40 in the workweek.

## VI.    ARGUMENT AND AUTHORITIES

22.     The paramount issue in this Motion is how many hours the total remuneration paid to Plaintiffs by Defendant Prime was intended to compensate. Plaintiffs allege that the remuneration received was intended to compensate them for only 40 hours of work. Defendants allege, and the summary judgment evidence will conclusively establish that the Plaintiffs had a clear understanding, expectation and agreement that the total remuneration that they received was intended to compensate them for all hours worked.

### A.     The agreement of the parties as to how many hours a worker's total remuneration is intended to compensate controls the calculation of the worker's regular rate of pay.

23.     A worker's regular rate of pay is a simple mathematical calculation in which the total remuneration received for the work performed is divided by the total number of hours actually worked by the worker for which such compensation was paid.

8

29 C.F.R. § 778.109 states in relevant part that:

> "The 'regular rate' under the Act is a rate per hour. The Act does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission, or other basis, but in such case the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek [ ]. **The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek <u>for which such compensation was paid</u>**." 29 C.F.R. § 778.109 (emphasis added).

24.     Using Plaintiff Lucas Cabrera as an example, at all relevant times, Mr. Cabrera was paid a daily rate by Defendant Prime of $550 per day, which was intended to compensate Mr. Cabrera for the 10 hours per day that Mr. Cabrera was expected to work. See Exhibit A, Excerpts from the deposition of Plaintiff Lucas Cabrera, deposition page 27, line 7 - page 28, line 7. It is undisputed that a standard workweek for Mr. Cabrera constituted six, ten-hour days. Accordingly, if Mr. Cabrera worked a standard workweek, he would have received total remuneration from Defendant Prime in the amount of $3,300.

25.     Utilizing the methodology expressed in 29 C.F.R. § 778.109, Mr. Cabrera's regular rate of pay is calculated by dividing the total remuneration received ($3,300) by the total number of hours that the $3,300 was intended to compensate (60) to yield a regular rate of pay for Mr. Cabrera of $55.00 per hour ($3,300 divided by 60 hours = $55.00 per hour).

26.     Contrary to both law and fact, Plaintiffs allege that in a standard workweek, Mr. Cabrera's regular rate of pay should be calculated by dividing the total remuneration

received ($3,300) by 40 hours, which would yield a regular rate of pay for Mr. Cabrera in a standard workweek of $82.50. There is no evidence to support Plaintiffs' allegation that Mr. Cabrera's remuneration was only intended to cover 40 hours per week. To the contrary, all of the summary judgment evidence supports Defendants' position that Plaintiffs and others similarly situated as managers and/or trainers for Defendant Prime knew, understood and agreed that their daily rate was intended to compensate them for ten (10) hours per day, six (6) days per week, or 60 hours per standard workweek. See Exhibit A, Excerpts from the deposition of Plaintiff Lucas Cabrera, deposition page 27, line 7 et seq.; See Exhibit B, Excerpts from the deposition of Amber Johnson, deposition page 6, line 8 et seq.; See Exhibit C, Excerpts from the deposition of Defendant Victor Green, deposition page 96, line 15 et seq.; See Exhibit D, Excerpts from the deposition of Jarnae Gregory, deposition page 7, line 3 et seq.; See Exhibit E.

27.     Accordingly, Defendants respectfully request this Court grant this Motion such that Plaintiffs' regular rate of pay be calculated by dividing each Plaintiff's actual total weekly remuneration by their actual number of hours worked as opposed to dividing the total remuneration by 40 hours as propounded by Plaintiffs.

**B.     The summary judgment evidence establishes that Plaintiffs were compensated by Defendant Prime at a daily rate, and therefore Plaintiffs are only entitled to overtime at one-half of each Plaintiff's regular rate of pay for hours worked in excess of 40 hours in a workweek, if any.**

28.     Plaintiffs and others similarly situated as managers and/or trainers for Defendant Prime agreed to perform their services for Defendant Prime for a daily rate specific to each Plaintiff. See Exhibit A, Excerpts from the deposition of Plaintiff Lucas

Cabrera, deposition page 27, line 7 et seq.; See Exhibit B, Excerpts from the deposition of Amber Johnson, deposition page 6, line 8 et seq.; See Exhibit C, Excerpts from the deposition of Defendant Victor Green, deposition page 96, line 15 et seq.; See Exhibit D, Excerpts from the deposition of Jarnae Gregory, deposition page 7, line 3 et seq.; See Exhibit E.

29.    29 C.F.R. § 778.112 (regarding daily rates of pay) states that:

> "If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek." 29 C.F.R. § 778.112.

30.    Because the summary judgment evidence establishes that Plaintiffs were compensated by a daily rate of pay, 29 C.F.R. § 778.112 controls, and the appropriate methodology to calculate overtime damages due to Plaintiffs, if any, is one-half of each Plaintiff's regular rate of pay (calculated as described in Section A, above) multiplied by the hours worked in excess of 40 in the workweek. Defendants respectfully request the Court grant this Motion finding that the preceding is the appropriate methodology for calculation of each plaintiff's overtime damages, if any.

**C.    In the alternative, the summary judgment evidence establishes that Plaintiffs were compensated by Defendant Prime at an hourly rate, and therefore Plaintiffs are only entitled to overtime at one-half of each Plaintiff's regular rate of pay (the hourly rate) for hours worked in excess of 40 hours in a workweek, if any.**

31.    Plaintiffs allege that their compensation was not a true day rate because they were "docked" for partial day absences. See Exhibit F, Plaintiff Cicely James'

Answer to Interrogatory No. 2 ("Furthermore, because Defendants docked the so-called 'day rate' for partial day absences, Plaintiffs were not true 'day-rate' employees…").

32.     Plaintiffs cite an email from Defendant Keith Bruce to Plaintiff Marjorie Castro in support of this allegation, which states "I modified the invoice to tabulate a daily for you. in the days column just put '1' unless you work a half day in which case .5 would be your entry." See Exhibit F, Plaintiff Cicely James' Answer to Interrogatory No. 2. Plaintiffs further cite an email from Defendant Chihuatha Compton to Plaintiff Laura Gaona in support of this allegation, which states "If you are working a 10 hour work day, then divide your daily rate by the 10 hours ($600/10 hrs) which means your hourly rate is $60/hr. Multiplying $60 times the # of hours you will be out of the office. Deduct that figure from your daily rate." *Id.* While Plaintiffs cite these two examples to support their contention that they were not actually paid on a day rate, these examples clearly show that if Plaintiffs were not paid on a day rate, they were paid an hourly rate.

33.     Defendants maintain that Plaintiffs were paid a day rate; however, if Plaintiffs were actually paid an hourly rate, the Court should still grant this Motion such that the appropriate methodology to calculate overtime damages due to Plaintiffs, if any, is one-half of each Plaintiff's regular rate of pay (calculated as described in Section A, above) multiplied by the hours worked in excess of 40 in the workweek.

34.     29 C.F.R. § 778.110(a) regarding an hourly rate employee states that:

"If the employee is employed solely on the basis of a single hourly rate, the hourly rate is the 'regular rate.' For overtime hours of work the employee must be paid, in addition to the straight time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week. Thus a $12 hourly rate will bring, for

an employee who works 46 hours, a total weekly wage of $588 (46 hours at $12 plus 6 at $6). In other words, the employee is entitled to be paid an amount equal to $12 an hour for 40 hours and $18 an hour for the 6 hours of overtime, or a total of $588." 29 C.F.R. § 778.110(a).

35.     If Defendant Prime actually compensated Plaintiffs at an hourly rate, which Plaintiffs acknowledge in their responses to Interrogatory No. 2[1], 29 C.F.R. § 778.112 controls, and the appropriate methodology to calculate overtime damages due to Plaintiffs, if any, is one-half of each Plaintiff's regular rate of pay (calculated as described in Section A, above) multiplied by the hours worked in excess of 40 in the workweek.

36.     Accordingly, Defendants respectfully request the Court grant this Motion finding that the preceding is the appropriate methodology for calculation of each plaintiff's overtime damages, if any.

## VII.   CONCLUSION

37.     Under either the daily rate or hourly rate structure, the regular rate for each Plaintiffs is calculated by dividing the total amount of the Plaintiff's remuneration by the total number of hours such Plaintiff worked. Once that regular rate of pay is determined, under either the daily rate or hourly rate structure, the overtime damages, if any, due to such Plaintiff is calculated by multiplying one-half (1/2) of the regular rate of pay by the total number of hours worked in excess of 40 hours per week.

38.     Because the summary judgment evidence conclusively establishes that Plaintiffs understood, knew, and agreed that they would be paid a daily rate and/or an

---

[1] Defendants represent to the Court that Interrogatory No. 2 was propounded to all Plaintiffs and all Plaintiffs responded to Interrogatory No. 2 with an identical answer. Defendants in good faith expect Plaintiffs to admit this fact and for judicial efficiency, Defendants have only attached the Interrogatory Responses of Plaintiff Cicely James.

hourly rate, Plaintiffs have already been paid for each and every hour that they worked at their regular rate of pay. Defendants therefore respectfully request that the Court grant this Motion for Partial Summary Judgment and order that if Defendants are determined to be liable to Plaintiffs for unpaid overtime wages, that such overtime wages be calculated as follows:

      c.      That Plaintiffs' regular rate of pay be calculated by dividing each Plaintiff's actual total weekly compensation by their actual number of hours worked.

      d.      That the appropriate methodology to calculate overtime damages due to Plaintiffs, if any, is one-half of each Plaintiff's regular rate of pay (calculated as described in Section A, above) multiplied by the hours worked in excess of 40 in the workweek.

## VIII.  REQUEST FOR RELIEF

THEREFORE Defendants request that the Court grant Defendants' Motion for Partial Summary Judgment as requested herein, and grant such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED,

SHEEHY LOVELACE & MAYFIELD PC


   */s/ David M. Mathews*           .
Philip E. McCleery
Texas Bar No. 13395000
SD of Texas No. 406233
pmccleery@slmpc.com
David M. Mathews
Texas Bar No. 24058211
SD of Texas No. 2810988
dmathews@slmpc.com
510 N. Valley Mills Dr., Suite 500
Waco, TX 76710
254.722.8022 Telephone
254.772.9297 Facsimile

COUNSEL FOR DEFENDANTS


## CERTIFICATE OF SERVICE

This is to certify that on the 29th day of June 2016, this Motion for Partial Summary Judgment has been sent via CM/ECF Electronic service and/or electronic mail to all counsel of record.


   */s/ David M. Mathews*           .
David M. Mathews

# Exhibit "A"

Lucas Cabrera                                              June 16, 2016

                                                              Page 1

                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF TEXAS
                            HOUSTON DIVISION

CICELY JAMES and KEN RICE,    ) CIVIL ACTION
Individually and on Behalf    ) NO.: 4-15-CV-02745
of All Others Similarly       )
Situated,                     )
                              )
              Plaintiffs,     )
                              )
VS.                           ) COLLECTIVE ACTION
                              )
PRIME CONSULTING GROUP,       )
INC., KEITH BRUCE and         )
CHIHUAHTHA COMPTON, and       )
VICTOR GREEN,                 )
                              )
              Defendants.     ) JURY TRIAL DEMANDED

          -----------------------------------

             ORAL AND VIDEOTAPED DEPOSITION OF

                        LUCAS CABRERA

                         JUNE 1, 2016

          -----------------------------------


        ORAL AND VIDEOTAPED DEPOSITION OF LUCAS CABRERA,

   produced as a witness at the instance of the DEFENDANT,

   and duly sworn, was taken in the above-styled and

   numbered cause on June 1, 2016, from 9:31 a.m. to 11:28

   a.m., before Kim A. McCann, CSR in and for the State of

   Texas, reported by machine shorthand, at the Courtyard

   by Marriott, 4901 W. Plano Parkway, Plano, Texas,

   pursuant to the Federal Rules of Civil Procedure and the

   provisions stated on the record or attached hereto.

Lucas Cabrera                                                    June 16, 2016

```
                                                          Page 2
 1                    A P P E A R A N C E S

 2    FOR THE PLAINTIFFS:

 3         Michael Starzyk, Esq.
            April L. Walter, Esq.
 4         STARZYK & ASSOCIATES, P.C.
            10200 Grogan's Mill Road
 5         Suite 300
            The Woodlands, Texas 77380
 6         (281) 364-7261
            (281) 364-7533 fax
 7         mstarzyk@starzyklaw.com

 8    FOR THE DEFENDANTS PRIME CONSULTING GROUP, INC., KEITH
       BRUCE and CHIHUAHTHA COMPTON, and VICTOR GREEN:
 9
           David M. Mathews, Esq.
10         SHEEHY, LOVELACE & MAYFIELD, P.C.
            510 N. Valley Mills Drive
11         Suite 500
            Waco, Texas 76710
12         (254) 772-8022
            (254) 772-9297 fax
13         dmathews@slmpc.com

14
      ALSO PRESENT:
15
           Mark Hendryx, Videographer
16         Craig Tetley
            Chihuahtha Compton
17

18

19

20

21

22

23

24

25
```

Page 9

1       San Antonio, did you have -- maintain a separate

2       residence in San Antonio or did you just live out

3       of your New Braunfels address?

4                A.  I came out of New Braunfels.

5                Q.  And how long have you been in

6       San Antonio?

7                A.  You mean living in New Braunfels

8       or --

9                Q.  I'm talking about working for Prime

10      Consulting Group.

11               A.  Working for Prime, okay.

12      September the 29th.

13               Q.  Of which year?

14               A.  Of 2014.

15               Q.  Okay.  And is that your first

16      engagement with State Farm?

17               A.  No.  I've worked for State Farm

18      before.

19               Q.  Okay.  When?

20               A.  Started back in 2000.

21               Q.  And were you working directly for

22      State Farm or were you working through an

23      independent --

24               A.  Independent.

25               Q.  -- adjusting firm?

Page 10

1              A.   Independent adjusting firm.

2              Q.   Who were you working for at that

3        time?

4              A.   Worley.

5              Q.   I'm sorry?

6              A.   Worley.

7              Q.   Worley?

8              A.   Worley Catastrophe.

9              Q.   And what time of work were you doing

10       for Worley in 2000?

11             A.   I was doing a lot of field work --

12       hailstorms, tornadoes, hurricanes.

13             Q.   And how long did you work for Worley?

14             A.   Since then all the way through

15       September of 2014 because I'd left -- when I left

16       Maryland to come to San Antonio, I was still with

17       Worley.  So off and on I worked with them through

18       -- through the September of '14.

19             Q.   So immediately prior to coming to

20       work for Prime in the San Antonio State Farm

21       office, you worked for Worley for 14 years?

22             A.   Off and on.

23             Q.   Okay.

24             A.   Because I worked for other companies

25       also.

Page 11

1          Q.   Okay.  Which companies?

2          A.   CNC, Pilot, NCA.

3          Q.   Any others?

4          A.   A small tenure with Wardlaw.  And I'm

5     trying to think if there's anybody else.  I think

6     that's it.

7          Q.   For each of those independent

8     adjusting firms that you listed, were you working

9     State Farm claims?

10         A.   Some of them I was.  With Pilot I was

11    with Allstate.  With Pilot I was also with

12    Nationwide.  With Wardlaw I worked Farmers.

13         Q.   And what types of claims were you

14    working?

15         A.   Auto and property.

16         Q.   The entire time?

17         A.   Yes, pretty much.  It varied where --

18    wherever the need was.

19         Q.   And was most of your work during --

20    from 2000 to 2014 all field work or was it in --

21    in-house?

22         A.   It was both field work and in-house.

23         Q.   Which of those firms did you work for

24    in-house?

25         A.   For -- for Worley -- yes, mainly

Page 12

1        Worley in-house.

2              Q.  Approximately when would that have

3        been?

4              A.  Right after Katrina.  2005 is when

5        Katrina happened and 2006 I was working property

6        in-house.

7              Q.  And were you -- where were you

8        in-house?  For a -- for an insurance company?

9        In-house at a insurance company's facility?

10             A.  Yeah, here in Irving, Texas for State

11       Farm.

12             Q.  For State Farm?

13             A.  Uh-huh.

14             Q.  Was the operation there -- and am I

15       correct in saying it was '05 to '06, in that

16       range?

17             A.  It was '06 I think.  Because Katrina

18       happened in '05, in -- yeah, probably '05, '06,

19       probably right.

20             Q.  And about how -- if it was '06, about

21       how long?  Was it a matter of months?  Years?

22             A.  I was there for about five or six

23       months.

24             Q.  And was that operation -- it was a

25       State Farm operation, correct?

Lucas Cabrera                                                    June 16, 2016

                                                        Page 13

```
 1              A.  Correct.
 2              Q.  Was it similar to the operation that
 3        you're currently working in in the Dallas
 4        Operations Center?
 5              A.  Yes, the difference being it's auto.
 6        This is auto.  That was property.
 7              Q.  Other than the distinction between
 8        auto versus property, was everything else the
 9        same?
10              A.  Slight differences but, you know,
11        pretty much the same.
12              Q.  Give me an example of a slight
13        difference.
14              A.  Our hours were a little different.
15        We worked from 7:00 to 5:00, whereas here we work
16        from 8:00 to 6:30.  But that was -- that was
17        pretty much the same hours.
18              Q.  Back in '06 when you were working for
19        Worley at a State Farm facility, did State Farm
20        set those hours?
21              A.  Uh-huh.
22              Q.  And did -- now working through Prime
23        in a State Farm facility, does State Farm set
24        those hours?
25              A.  Yes.
```

Lucas Cabrera                                                    June 16, 2016

                                                                Page 14

1           Q.  And were you paid as an independent

2      contractor when you were working for Worley

3      through State Farm back in '06?

4           A.  Back in '06, yes.

5           Q.  Prior to September of 2015 when you

6      were working with Prime and everyone was

7      converted to an employee, was there any occasion

8      in your experience working in adjusting -- in the

9      adjusting field, whether as a manager or as -- or

10     as an adjuster, that you were paid as an employee

11     rather than an independent contractor?

12          A.  Okay.  Repeat the question.

13          Q.  Sure.  You've -- you had about

14     14 years of experience in the insurance adjusting

15     field prior to coming to work for Prime; is that

16     right?

17          A.  Correct.

18          Q.  Is there any place that you worked as

19     an employee during that time or were you an

20     independent contractor each and every time?

21          A.  Independent.

22          Q.  Independent contractor?

23          A.  Yes, independent contractor.

24          Q.  And I guess I should go back and ask

25     the question:  Prior to 2000 -- you'd said that

Page 27

1        elsewhere.  I was going to take a few days off

2        anyway.

3               Q.  Had you looked for employment at

4        that -- during that time?

5               A.  No.  I was going to take a few weeks

6        just to relax.

7               Q.  Now when you were originally -- when

8        you originally started your working for Prime,

9        how much were you paid?

10              A.  550 a day.

11              Q.  And how many hours were you expected

12       to work?

13              A.  I wasn't necessarily told any hours,

14       just --

15              Q.  I'm sorry?

16              A.  I wasn't told any hours.

17              Q.  When was the office open?

18              A.  We got there at 8:00 o'clock and we

19       left at 6:15.

20              Q.  When you say "we," are you speaking

21       about the adjusters?

22              A.  Adjusters and management, yeah.

23              Q.  And it was communicated to you by

24       Prime that you were expected to be in the office

25       when the adjusters were there, correct?

Page 28

```
 1              A.  Correct, management being Ken and
 2         myself, yes.
 3              Q.  Right.  So you had a clear
 4         expectation that the adjusters were in the office
 5         beginning at 8:00 and ending at 6:30.  Is that
 6         what you said?
 7              A.  6:15.
 8              Q.  6:15.  And it was also a clear
 9         expectation that you would be present --
10         management would be present while the adjusters
11         were there, correct?
12              A.  Yes, management would be present.
13              Q.  And when -- how many hours were you
14         there on a typical day?
15              A.  The hours that they were there.
16              Q.  The hours -- so you were there when
17         you were expected to be there --
18              A.  Sure.
19              Q.  -- is that correct?
20              A.  Sure.
21              Q.  Is that a yes?
22              A.  Yes.  Yes.
23              Q.  I'm sorry, you said until 6:15,
24         correct?
25              A.  The hours until 6:15.
```

Page 29

```
 1            Q.  So you were there ten hours a day,
 2       right?
 3            A.  Uh-huh.  I'm sorry, yes.  I didn't
 4       mean to say "uh-huh."  Yes.
 5            Q.  Thank you for catching it.
 6                What other benefits did you receive
 7       from September 2014 until September 2015?
 8                MR. STARCYZ:  Objection.  Vague.
 9            Q.  Did you receive any other employment
10       benefits like vacation time?  Sick time?  Holiday
11       pay?
12            A.  No, sir.
13            Q.  You were paid when you worked,
14       correct?
15            A.  Correct.
16            Q.  And when you didn't work, you didn't
17       get paid?
18            A.  Correct.
19            Q.  So you were expected to work six days
20       a week, correct?
21            A.  Correct.
22            Q.  Six days a week, ten hours a day?
23                MR. STARCYZ:  Objection.
24            A.  Typ --
25                MR. STARCYZ:  Hold on.  Asked and
```

# Exhibit "B"

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CICELY JAMES and KEN RICE, | ) | CIVIL ACTION |
| Individually and on Behalf | ) | NO.: 4-15-CV-02745 |
| of All Others Similarly | ) | |
| Situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| VS. | ) | COLLECTIVE ACTION |
| | ) | |
| PRIME CONSULTING GROUP, | ) | |
| INC., KEITH BRUCE and | ) | |
| CHIHUAHTHA COMPTON, and | ) | |
| VICTOR GREEN, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

-----------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF

AMBER JOHNSON

JUNE 1, 2016

-----------------------------------


    ORAL AND VIDEOTAPED DEPOSITION OF AMBER JOHNSON,

produced as a witness at the instance of the DEFENDANT,

and duly sworn, was taken in the above-styled and

numbered cause on June 1, 2016, from 1:35 p.m. to 4:00

p.m., before Kim A. McCann, CSR in and for the State of

Texas, reported by machine shorthand, at the Courtyard

by Marriott, 4901 W. Plano Parkway, Plano, Texas,

pursuant to the Federal Rules of Civil Procedure and the

provisions stated on the record or attached hereto.

Page 2

```
 1                    A P P E A R A N C E S

 2    FOR THE PLAINTIFFS:

 3         Michael Starzyk, Esq.
            April L. Walter, Esq.
 4         STARZYK & ASSOCIATES, P.C.
            10200 Grogan's Mill Road
 5         Suite 300
            The Woodlands, Texas 77380
 6         (281) 364-7261
            (281) 364-7533 fax
 7         mstarzyk@starzyklaw.com

 8    FOR THE DEFENDANTS PRIME CONSULTING GROUP, INC., KEITH
       BRUCE and CHIHUAHTHA COMPTON, and VICTOR GREEN:
 9
           David M. Mathews, Esq.
10         SHEEHY, LOVELACE & MAYFIELD, P.C.
            510 N. Valley Mills Drive
11         Suite 500
            Waco, Texas 76710
12         (254) 772-8022
            (254) 772-9297 fax
13         dmathews@slmpc.com

14
      ALSO PRESENT:
15
           Mark Hendryx, Videographer
16         Craig Tetley
            Chihuahtha Compton
17

18

19

20

21

22

23

24

25
```

1           A.   Winter Haven.

2           Q.   And how long were you in the trainer

3      position?

4           A.   I would say maybe a month.

5           Q.   And then what position did you assume

6      after that?

7           A.   Manager.

8           Q.   When you began working for Prime,

9      what was -- what was the -- what were the

10     expectations in terms of number of hours that you

11     were expected to work?

12          A.   The expectation was that we would be

13     in the office the same amount of hours and work

14     the same shift that our adjusters worked.

15          Q.   And you've only ever worked in that

16     Winter Haven office?

17          A.   For Prime, yes.

18          Q.   And we'll come back to some of your

19     history here in a second.

20               Has -- has the hours worked at the

21     Winter Haven office changed since you've been

22     there in November of '14?

23          A.   When you say "hours," you mean --

24     what do you mean?

25          Q.   Well, we were discussing what the

1       expectations were as to what -- what hours you

2       were expected to be working, and you said you

3       were expected to be working whenever the

4       adjusters were there.  Is that correct?

5               A.  Yes.

6                   MR. STARCYZ:  Objection.  Leading.

7               Q.  Were the adjusters -- what -- at any

8       time in the last year and a half, two years since

9       you've been working with Prime, at any time did

10      the total number of hours in a week change?

11              A.  No.

12              Q.  Because some offices -- is at

13      accurate to say some offices work 50 hours a

14      week; some offices work 60 hours a week?

15              A.  I don't know that.

16              Q.  Okay.  But how many hours does --

17      does the Winter Haven office run?

18              A.  Sixty hours.

19              Q.  And that six ten-hour days?

20              A.  Yes.

21              Q.  How were those expectations

22      communicated to you?

23              A.  Initially when I was hired, the

24      recruiter gave me all the information regarding

25      our hours and my expectations.

Page 8

1          Q.  And who was that recruiter?

2          A.  Rose Grier.

3          Q.  And were those expectations also

4     confirmed by Prime personnel after you came on

5     board?

6          A.  Yes.

7          Q.  Was it your -- what was your

8     compensation structure at that time?

9          A.  I was being paid as trainer 550 a

10    day.

11         Q.  And did that amount change when you

12    became a manager?

13         A.  Yes.

14         Q.  To what?

15         A.  Six hundred a day.

16         Q.  And how many hours was that 550 or

17    then 600 when you transitioned to a manager

18    position -- how many hours were those amounts

19    intended to compensate?

20             MR. STARCYZ:  Objection.  Calls for

21    speculation.

22         A.  Sixty hours.

23         Q.  And I'll ask it a different way.  You

24    had just said that the -- strike that.

25             Your answer to the question prior was

1    60 hours, that the 550 was intended to compensate

2    or the 600 was intended to compensate as manager

3    what -- and you said 60.  Obviously, it wasn't

4    60.

5              How many hours were you expected to

6    work in a day?

7              MR. STARCYZ:  Objection.  Leading.

8    Asked and answered.

9         A.  In a day?  Ten hours in a day.

10        Q.  So the 550 as a trainer was intended

11   to compensate you for all ten of those hours?

12             MR. STARCYZ:  Objection.  Leading.

13   Calls for speculation.

14        A.  Yes.

15        Q.  How is it that you -- how was it

16   communicated to you that the 550 or the 600 was

17   intended to compensate you for all ten of those

18   hours each day?

19             MR. STARCYZ:  Same objections.

20        A.  I remember having a phone

21   conversations.

22        Q.  With who?

23        A.  Rose Grier first -- and I cannot

24   remember who I had another phone conversation

25   with.

Page 10

1              Q.  If you didn't work -- would that --

2       strike that.

3                   Would that other person that you had

4       a conversation with, would it have been a Prime

5       personnel?

6              A.  Yes.

7              Q.  If you didn't work a full ten-hour

8       day, let's say you only worked a five-hour day,

9       how much would you receive for that particular

10      day where you worked a half a day?

11             A.  Half of the 550.

12             Q.  And then when you became a manager,

13      would -- if you worked a half of a day, would you

14      have also received half of the 600?

15             A.  Yes.

16             Q.  What if you worked less than a half

17      of a day, I mean, like a quarter of a day, what

18      would you have received?

19             A.  I -- I can say it will be a quarter

20      of a day, but I've never worked that.  So I'm not

21      sure.

22             Q.  Okay.  Have there been occasions

23      where you have worked a half of a day?

24             A.  Yes.

25             Q.  And you received half of the total

Page 11

1          daily amount, correct?

2                    A.  Yes.

3                    MR. STARCYZ:  Objection.  Leading,

4          again.

5                    Q.  Did -- was that policy communicated

6          to you in some way?

7                    A.  Yes.

8                    Q.  How was that communicated?

9                    A.  I remember having a meeting, a

10         manager's meeting going over that specific of --

11         about pay and taking off time.  So we did have a

12         meeting.

13                   Q.  And when you say manager's meeting,

14         was it an in-person meeting or over the phone?

15                   A.  Over the phone.

16                   Q.  How often would these meetings

17         happen?

18                   A.  I don't know.  They were sporadic.  I

19         can't really say exactly how many meetings and

20         when.

21                   Q.  Did this particular meeting where you

22         recall the discussion as to half of a daily rate

23         of pay for half of a day of work, would that --

24         did that conference call happen toward the

25         beginning of the time you were working with Prime

# Exhibit "C"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CICELY JAMES, and | ) | CIVIL ACTION |
| KEN RICE, et al., | ) | NO. 4:15-02745 |
| Individually and on Behalf | ) | |
| of All Others Similarly | ) | |
| Situated, | ) | |
|      Plaintiffs, | ) | |
| | ) | COLLECTIVE ACTION |
| VS. | ) | |
| | ) | |
| PRIME CONSULTING GROUP, | ) | |
| INC.; KEITH BRUCE, | ) | |
| CHIHUAHTHA COMPTON and | ) | |
| VICTOR GREEN, | ) | |
|      Defendants. | ) | JURY TRIAL DEMANDED |

**********************************************************

ORAL AND VIDEOTAPED DEPOSITION OF

VICTOR B. GREEN

May 3, 2016

**********************************************************

ORAL AND VIDEOTAPED DEPOSITION OF VICTOR B. GREEN,
produced as a witness at the instance of the PLAINTIFFS,
and duly sworn, was taken in the above-styled and
numbered cause on the 3rd of May, 2016, from 9:00 a.m. to
5:35 p.m., before David S. Smith, RPR, CSR in and for the
State of Texas, reported by machine shorthand, at the
offices of Prime Consulting Group, Inc.; 1006 Thompson
Road; Richmond, Texas, pursuant to the Federal Rules of
Civil Procedure and the provisions stated on the record
or attached hereto.

7efa4e0e-61c5-46ca-a289-fad272df2a01

```
 1                  A P P E A R A N C E S

 2

 3   FOR THE PLAINTIFFS:
          Mr. Michael A. Starzyk
 4        Ms. April L. Walter
          STARZYK & ASSOCIATES, P.C.
 5        10200 Grogan's Mill Road, Suite 300
          The Woodlands, Texas 77380
 6        mstarzyk@starzyklaw.com
          awalter@starzyklaw.com
 7

 8
     FOR THE DEFENDANTS:
 9        Mr. David M. Mathews
          SHEEHY, LOVELACE & MAYFIELD, P.C.
10        510 N. Valley Mills Drive, Suite 500
          Waco, Texas 76710
11        dmathews@slmpc.com

12

13   ALSO PRESENT:
          Ms. Chihuahtha Compton
14        Mr. Keith Bruce

15

16   VIDEOGRAPHER:
          Ms. Mary Elizabeth Gaasch
17        CLS, Inc.
          3701 Kirby Drive
18        Houston, Texas 77098
          clsvideo@prodigy.net
19

20

21

22

23

24

25
```

7efa4e0e-61c5-46ca-a289-fad272df2a01

Page 96

1    coming on in terms of how they would be paid?

2         A    Nothing.

3         Q    I'm sorry?

4         A    Nothing.

5         Q    Okay.  Well, how would they know what they

6    were going to get paid, then?

7         A    I didn't tell them anything.  The other person

8    would have told them.  I didn't speak to any of the

9    managers prior to them coming on board.

10        Q    Okay.  But your folks --

11        A    Right.

12        Q    -- at Green's Claims Service were doing the

13   work?

14        A    That's correct.

15        Q    What would you have told them to tell the

16   potential managers about how they would get paid?

17        A    That they would get a day rate, whatever the

18   day rate was that Keith and Chihuahtha communicated to

19   me.  They would be working 60 hours or the amount of

20   time that the claims adjusters are actually working in

21   the office.  They are expected to be there as long as

22   the claim reps are there, six days a week.

23        Q    So, they were not paid a salary?  They weren't

24   guaranteed any amount of money.  They were told that you

25   get paid X dollars a day, whatever that is?

7efa4e0e-61c5-46ca-a289-fad272df2a01

Page 97

1      A     That's a guarantee per day.  If you work,

2   you're guaranteed to get paid.

3      Q     Right.  Only if you work?

4      A     That's correct.

5      Q     So, if I worked one day, are you going to tell

6   the manager that I'm going to get paid $500 a day,

7   whatever that day rate is?

8      A     That's correct.

9      Q     If I work four days, I get four times 500?

10     A     That's correct.

11     Q     If I only work one day, I'm not going to get

12  my salary for an entire week, right, like I would if I

13  were a regular salaried person?

14     A     Right.  But you wouldn't think that because

15  you're not a salaried person.  You're working a day

16  rate, that's correct.

17     Q     So, if I work, I get paid; if I don't work, I

18  don't get paid?

19     A     That's right.  That's correct.

20     Q     What did you have your folks communicate to

21  the potential managers about whether or not they would

22  receive overtime?

23     A     They were expected to work 60 hours a week;

24  and that day rate encompassed 60 hours a week, ten-hour

25  days six days a week.

7efa4e0e-61c5-46ca-a289-fad272df2a01

Page 98

1    Q    So, all they would receive is the money they
2  were paid for each day they worked?
3    A    Correct, but it was understood that that day
4  consists of ten-hour days.
5    Q    And how was that understood?
6    A    It was told they were working ten hours days,
7  six days a week.  They were expected to be in the office
8  as long as the adjusters were in the office.
9    Q    So, if the adjusters are in the office longer,
10  then the managers would have to be in the office longer?
11    A    Well, they are not because it's specific on
12  the work order as to ten-hour days.
13    Q    And you understand from your experience at
14  Prime, that there have been many occasions where your
15  managers have worked more than 60 hours a week even
16  though they are not supposed to, right?
17    A    I've also understand that they have taken time
18  off, comp time, when they have done that.
19    Q    Do you know if comp time is legal for a
20  private company?
21    A    I don't know that.
22    Q    As the director of claims, do you think that's
23  something that you should be aware of?
24    A    I'm referring to when it happened.  I was not
25  the director of claims then.

7efa4e0e-61c5-46ca-a289-fad272df2a01

# Exhibit "D"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CICELY JAMES and KEN RICE, Individually and on Behalf of All Others Similarly Situated, | ) CIVIL ACTION ) NO.: 4-15-CV-02745 ) ) ) |
| Plaintiffs, | ) ) ) |
| VS. | ) COLLECTIVE ACTION ) |
| PRIME CONSULTING GROUP, INC., KEITH BRUCE and CHIHUAHTHA COMPTON, and VICTOR GREEN, | ) ) ) ) ) |
| Defendants. | ) JURY TRIAL DEMANDED |

------------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF

JARNAE GREGORY

JUNE 2, 2016

------------------------------------


ORAL AND VIDEOTAPED DEPOSITION OF JARNAE GREGORY,

produced as a witness at the instance of the DEFENDANT,

and duly sworn, was taken in the above-styled and

numbered cause on June 2, 2016, from 11:05 a.m. to 12:53

p.m., before Kim A. McCann, CSR in and for the State of

Texas, reported by machine shorthand, at the Courtyard by

Marriott, 4901 W. Plano Parkway, Plano, Texas, pursuant

to the Federal Rules of Civil Procedure and the

provisions stated on the record or attached hereto.

                                                                  Page 2

 1                     A P P E A R A N C E S

 2     FOR THE PLAINTIFFS:

 3         Michael Starzyk, Esq.
            April L. Walter, Esq.
 4         STARZYK & ASSOCIATES, P.C.
            10200 Grogan's Mill Road
 5         Suite 300
            The Woodlands, Texas 77380
 6         (281) 364-7261
            (281) 364-7533 fax
 7         mstarzyk@starzyklaw.com

 8     FOR THE DEFENDANTS PRIME CONSULTING GROUP, INC., KEITH
        BRUCE and CHIHUAHTHA COMPTON, and VICTOR GREEN:
 9
            David M. Mathews, Esq.
10         SHEEHY, LOVELACE & MAYFIELD, P.C.
            510 N. Valley Mills Drive
11         Suite 500
            Waco, Texas 76710
12         (254) 772-8022
            (254) 772-9297 fax
13         dmathews@slmpc.com

14
       ALSO PRESENT:
15
            Mark Hendryx, Videographer
16         Victor Green

17

18

19

20

21

22

23

24

25

Page 7

```
 1              Q.  And when did that change?

 2              A.  September of 2015.

 3              Q.  What was your agreement with Prime

 4     when you were an independent contractor in terms

 5     of how much you were to be paid and how many

 6     hours were expected to work?

 7              A.  Oh, I could look.  Off the top of my

 8     head -- 60 hours for sure, but I don't know -- I

 9     don't remember the pay.

10              Q.  Okay.  Was it a daily rate?

11              A.  No.

12              Q.  It was -- what was it then?

13              A.  Sorry.  I think it was hourly, I

14     think.  It wasn't daily, though.

15              Q.  Always hourly?

16              A.  I believe so.

17              Q.  At least that was your understanding?

18              A.  Yes, it was hourly.  Yes, it was.

19              Q.  What was -- what exactly was your

20     understanding then?  If you were to work a full

21     day, you would get paid for a full day?

22              MR. STARCYZ:  Objection.  Leading.

23              Q.  And another thing, if Mr. Starcyz or

24     I object, you can go ahead and answer the

25     question.
```

Page 8

1            A.   Oh, okay.   So the question was?

2            Q.   The question was, what was your

3       understanding of how you were paid?

4            A.   My understanding was that I would be

5       paid for the time that I was working ten hours.

6            Q.   And that was your understanding from

7       the very beginning when you began working with

8       Prime?

9            A.   Correct.

10           MR. STARCYZ:   Objection.   Leading.

11           Q.   And what -- how did you acquire that

12      understanding?   Who -- who told you that that's

13      how it would work?

14           A.   I want to say that it was in writing

15      when I started or it -- it could have been when I

16      met with them in Houston.   But I'm sorry.

17           Q.   Where were you working before you

18      came to Prime?

19           A.   State Farm.

20           Q.   How long were you working with State

21      Farm -- or for State Farm?

22           A.   I worked for State Farm for it would

23      have been two years last year, May.

24           Q.   You had started --

25           A.   Just shy of two years.

# Exhibit "E"

TO:       Lucas Cabrera

From:     Victor Green

Date:     January 21, 2016

RE:       Work Hours


Lucas,

This letter will serve as a follow up to our telephone conversation on January 19, 2016.

During that conversation, we discussed your attendance.  It was brought to my attention that you are not working the same work schedule as our Claims Representatives.  When your contract of employment was offered, and you accepted, you were clearly advised of the work schedule.  The schedule has been the same since the beginning of your employment at the Dallas Operation Center. No deviations in the work schedule were approved or made when the new contract was offered and you accepted.

You advised that your new salary was based on a forty (40) hour work week.  This is the information you provided to me during our telephone conversation and also the information provided to your manager, Clarence Estes.  Prime Consulting Group has never communicated to you that your salary was based on a forty (40) hour work week.  You also indicated that you left work early each day, because the work was slow and you were not needed at the operation.  Based on my understanding, you never asked your direct manager for approval to leave the operation site early.

Our management team, including you, were advised during our monthly meeting of Prime Consulting Group's work/attendance expectations.  This includes, but not limited to, all managers being present at the location during the same hours of operation as our claims representatives.

Based on our conversation and your meeting with your direct supervision, it is clear that you have violated our attendance requirement.  In addition, you have



DEPOSITION
EXHIBIT NO.
21
C.S.R., INC.

**James 00452**

not comply with managements request to be present during the same operation hours as our claims representatives.  This is insubordination and is grounds for immediate termination of your employment with Prime Consulting Group.

Thank you,

Victor Green, Director of Claims

Please sign below, acknowledging receipt of this correspondence.

✳ I have signed this letter to acknowledge receipt of it only. I do not agree with the contents of the letter because you told me when I was demoted and my pay was lowered by $26,000 that I no longer had to work 60 hours per week.

*Lucas Clements*

James 00453

# Exhibit "F"

**IN THE UNITED STATES**
**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CICELY JAMES, and** | § | **CIVIL ACTION NO. 4:15-cv-02745** |
| **KEN RICE,** | § | |
| **Individually and on Behalf of All Others** | § | |
| **Similarly Situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **COLLECTIVE ACTION** |
| | § | |
| **PRIME CONSULTING GROUP, INC.,** | § | |
| **KEITH BRUCE, and** | § | |
| **CHIHUAHTHA COMPTON,** | § | |
| | § | |
| **Defendants.** | § | **JURY TRIAL DEMANDED** |

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSES**
**TO DEFENDANT PRIME CONSULTING GROUP, INC.'S**
**FIRST SET OF INTERROGATORIES**
**TO PLAINTIFF CICELY JAMES**

To:    Defendants Prime Consulting Group, Inc., et al., through its attorneys of record David Mathews and Philip McCleery, Sheehy, Lovelace & Mayfield, P.C., 510 N. Valley Mills Drive, Suite 500 Waco, Texas  76710.

Pursuant to the Federal Rules of Civil Procedure, Plaintiff Cicely James ("Plaintiff") serves

the following Objections, Assertions of Privilege and Responses to the First Set of Interrogatories

of Defendant Prime Consulting Group, Inc. ("Defendant").

                                        **RESPECTFULLY SUBMITTED,**

                                        */s/ Michael A. Starzyk.*
                                        **Michael A. Starzyk**
                                        Texas Bar No. 00788461
                                        SD of TX No. 16926
                                        mstarzyk@starzyklaw.com
                                        **April L. Walter**
                                        Texas Bar No. 24052793
                                        SD of TX No. 713287
                                        awalter@starzyklaw.com

**Megan M. Mitchell**
Texas Bar No. 24073504
SD of TX No. 2174572
mmitchell@starzyklaw.com
**Starzyk & Associates, PC**
10200 Grogan's Mill Rd, Suite 300
The Woodlands, Texas 77380
Telephone:  (281) 364-7261
Facsimile:  (281) 364-7533

**ATTORNEYS FOR PLAINTIFFS,
CICELY JAMES and KEN RICE,
Individually and on Behalf of All Others
Similarly Situated.**

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2016, I served the foregoing on the following in accordance with the Federal Rules of Civil Procedure:

**David M. Mathews**
dmathews@slmpc.com
**Philip E. McCleery**
pmccleery@slmpc.com
Sheehy, Lovelace & Mayfield, PC
510 N. Valley Mills Drive, Suite 500
Waco, TX 76710
254.772.8022 Telephone
254.772.9297 Facsimile

**ATTORNEYS FOR DEFENDANTS**

/s/ Michael A. Starzyk._____
Michael A. Starzyk

2

## FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:** Please provide the following personal data: name, address, date of birth, driver's license number, Social Security number, marital status, and names of dependents and their ages.

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:** Plaintiff objects that this request seeks matter that is not relevant to any party's claim or defense or proportional to the needs of the case considering the importance (i.e., none) of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(1). Plaintiff further objects that this request contains several discrete subparts and not merely one interrogatory. Fed. R. Civ. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."). Plaintiff further objects that this request seeks information already in the possession of Defendant. Subject to and without waiving the foregoing objections, Plaintiff responds:

> Cicely James
> 631 Lakemont Drive
> Brandon, FL 33510

**INTERROGATORY NO. 2:** Please state all of the reasons, facts, communications, and documents that support your contention that you are entitled to liquidated damages.

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:** Plaintiff objects that this request contains several discrete subparts and not merely one interrogatory. Fed. R. Civ. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."). Plaintiff further objects to this request as calling for a legal analysis. Plaintiff also objects to this request on the ground it seeks information protected by the attorney-client privilege and/or attorney work product doctrine by purporting to require counsel's impressions, conclusions, opinions and/or theories in asking for Plaintiff to list documents relating to specific issues in the case. *See Sporck v. Peil*, 759 F.2d 312, 315-17 (3d Cir.), *cert. denied*, 474 U.S. 903 (1985). *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327-28 (8th Cir. 1986). Plaintiff further objects to this request to the extent that it requires proof of a negative, i.e., that Defendants do not have a good faith affirmative defense to the imposition of liquidated damages. Subject to and without waiving the foregoing objections, Plaintiff responds (with the assistance of Plaintiffs' counsel):

In about January 2014, Defendants began violating the Fair Labor Standards Act ("FLSA") by misclassifying as independent contractors the "managers" and "trainers" (the "Site Managers") overseeing the work of the telephone/desk insurance claims adjusters that Prime Consulting Group, Inc. ("Prime") employs to work on State Farm claims at State Farm offices. As so-called "contractors," Prime paid these Site Managers only an *invalid* "day rate," with no additional compensation for overtime hours in excess of forty hours per week, and they were consistently scheduled to work 50-60 hours per week.

3

Day rate employees must be paid overtime premiums, and Defendants paid Plaintiffs no overtime premiums whatsoever.

Furthermore, because Defendants docked the so-called "day rate" for partial day absences, Plaintiffs were not true "day rate" employees and thus, they are entitled to overtime pay at time-and-a-half their regular rate of pay calculated based on their total compensation each week.

For example, on August 29, 2014, individual defendant and Prime owner/executive Keith Bruce replied to an e-mail from Plaintiff Marjorie Castro asking how to turn in her time:  "I modified the invoice to tabulate a daily for you.  In the days column just put '1' unless you work a half day in which case .5 would be your entry."

As another example, when Plaintiff Laura Gaona was going to be off one morning and she e-mailed individual defendant and Prime owner/executive Chihauhtha Compton to ask "[H]ow to report this time since I am on a daily rate," Ms. Compton replied:  "If you are working a 10 hour work day, then divide your daily rate by the 10 hours ($600/10 hrs) which means your hourly rate is $60/hr.  Multiply $60 times the # of hours you will be out of the office.  Deduct that figure from your daily rate.  For example, if you are out of the office 5 hours, you would multiply $60 x 5 hours = $300.  Deduct $400 from your $600 daily rate; so you would bill $400 for that day."

Plaintiffs are aware of no evidence showing Defendants obtained a U.S. Department of Labor opinion letter approving of their compensation plan that is now being challenged.

Plaintiffs are aware of no evidence showing Defendants consulted with legal counsel for advance approval of their compensation plan that is now being challenged.

Prime recently re-classified (effective on or about September 14, 2015) its Site Managers as employees and started paying them overtime wages for their overtime hours.  Prime even retroactively dated the Site Managers' personnel documents back to their original start date with the company working as "contractors" when it implemented the re-classification.

Before the re-classification to employee status, Defendants made no payroll tax or other withholdings from Plaintiffs' wages and reported these payments to the IRS using Form 1099 – illegally "saving" Prime hundreds of thousands of dollars in payroll taxes that Plaintiffs unjustly had to pay while they were misclassified.  Prime also avoided providing Plaintiffs any employee benefits they would have been entitled to as employees.

The evidence strongly shows Plaintiffs were misclassified as independent contractors before their September 2015 re-classification as employees, including:  Plaintiffs worked exclusively for Prime for upwards of a year or more at a common work location performing routine job skills under the strict supervision of Defendants (and their client, State Farm) and without any personal investment or opportunity for an individualized profit or loss.

Defendant Bruce even provided Plaintiffs Craig Tetley and Donald Anders with letters on Prime letterhead to verify their "employment," writing, for example, for Mr. Tetley in May 2015: "This correspondence will serve as verification of employment status for Mr. Timothy Tetley. Mr. Tetley is a Claim Adjusting Manager with our firm, who began working for us in January 2015….Mr. Tetley receives remuneration is in [*sic*] the amount of $550.00 a day. He works six days a week, thus his bi-weekly pay is $6,600." For Mr. Anders, Defendant wrote on October 28, 2014: "Re: Employment Verification of Mr. Donnie Anders [¶] This correspondence will serve as verification of employment for Mr. Donnie Anders. Mr. Ander's employment with our firm began on October 7, 2014. Mr. Anders serves as our Claim Manager for a group of 25 claim adjusters that our firm have [*sic*] handling auto insurance claims for our client, State Farm in Duluth, GA. This contract with our client is until October 7, 2015 and we have also received an indication that it will extend beyond that date. [¶] Mr. Anders typically works 6 days a week. Her [*sic*] remuneration is based on $650.00 for every full day worked. [¶] If there any [*sic*] other items concerning the employment of Ms. Schooling [*sic*], I can be contacted at the phone number below."

Plaintiffs should have been classified as employees long before the September 2015 reclassification – and Defendants clearly knew this. In her Affidavit submitted in support of Plaintiffs' Motion for Conditional Certification as a Collective Action, Plaintiff Cicely James attested to the fact that: "Prime was talking about reclassifying us as 'employees' as far back as around the time I came to work for that company in December 2014. Keith Bruce told me that he knew that State Farm wanted everyone re-classified to employee status, but that he was holding off until the client forced him to actually do it."

Plaintiffs' relationships with Prime were continuing in nature – they continued to report to work from day-to-day until they decided to resign or were terminated or released. Plaintiffs were subject to termination for reasons other than nonperformance of any alleged "contract" specifications (and there was no "contract"), and likewise, they were free to resign their positions at any time with or without advance notice or good cause without incurring any financial liability to Prime for failure to complete the jobs to which they had been assigned.

Plaintiffs were typically required to work at least 10-hour shifts, five to six-days per week (or a total of at least 50 hours per week) – without any overtime premiums paid to them during that period. Given the high number of overtime hours worked for Prime at State Farm's facility each day/week, working elsewhere was virtually impossible, and during the time they worked for Prime, Plaintiffs did not make their services available to the general public or work for any other vendors. They also were not allowed to sub-contract out the work or to hire, supervise, or pay assistants to help them perform the services they were paid to perform – rather, all services provided to Prime were required to be performed by Plaintiffs personally. Plaintiffs would identify themselves as working for Prime in their e-mail signature blocks on business e-mails they sent during the time they worked for Prime.

Plaintiffs did not contribute equipment, tools or other materials that were needed for their work. Rather, State Farm provided the Site Managers dedicated e-mail addresses, a computer, telephone, assigned workstation, desk, chair, paper, badge and other miscellaneous office supplies. Initial and ongoing training was also provided and State Farm provided detailed instructions about

how it expected the work to be performed in a particular manner.  Defendants even reimbursed Plaintiffs for mileage, travel and licensing expenses.

Plaintiffs' jobs entailed being the first and principal point of contact for the insurance claims adjusters that Prime employed at State Farm's offices on all personnel and claim-related issues.  They were essentially liaisons between the adjusters and State Farm representatives, on the one hand, and the adjusters and Prime's Home Office, on the other hand.  In this role, they would, for example, coordinate the lunch breaks, claim assignments, and time off requests for the adjusters employed by Prime at their office.  Plaintiffs' authority to approve time off requests was limited by the corporate Home Office.  For example, in November 2015, in writing about corporate's denial of two adjusters' requests for vacation time, Defendant Green wrote:  "At the last management meeting we reminded you guys of that policy.  We have had that policy in place for many months and communicated it to you guys in prior meetings."  Plaintiffs could not even grant their teams of adjusters permission to wear jeans to the office without permission from Defendants (which permission was largely denied).

The services that Plaintiffs provided were integrated into Prime's business operation (that is to say, the success of Prime's business operations depended on the services that Plaintiffs' performed), and the type of work the Plaintiffs performed was the type of services that Prime offers to its client, State Farm (namely, insurance claims adjusting-related services).

Plaintiffs had to abide by Prime's dress code (for the adjusters too) (including collared shirts, khaki pants, and the like).  On May 2, 2015, Compton sent an e-mail to Plaintiffs stating "it is important that we set the example for our adjusters.  We discussed punctuality, dress code, professionalism, etc. during our last conference call.  Let's make sure we are setting the example in these areas as well."

From time to time Prime's Home Office would schedule conference calls with the Site Managers throughout the country to discuss various business matters.  In or about May 2015, Defendants indicated in one of these conference calls that they would be re-classifying the Plaintiffs to employees, but as indicated above, this change did not take effect until on or about September 14, 2015.

Prime set all days and hours for Plaintiffs' schedules and Plaintiffs' were required to perform the work at the premises of Prime's customer, State Farm.  State Farm controlled Plaintiffs' schedules and hours because it controlled the hours of operation (and any holiday closures) of their offices, where the work was performed.  Plaintiffs were required to ask Defendants for permission to take time off.

Plaintiffs were never paid by the job(s) completed, like contractors are typically paid. Instead, Prime paid Plaintiffs invalid "day rates," with their "day rates" reduced for the hours of work they missed if they were late or left early.  Accordingly, Plaintiffs were not truly paid a "day rate" while misclassified as contractors, since the rate they were paid would vary based on the hours they worked on a particular day, and they were paid only when they worked.

6

The "invoice" form that Prime provided Plaintiffs to use to report the days they worked for payroll purposes was the same "invoice" form that Prime required the desk adjusters that Plaintiffs managed – who were properly classified as employees – to use.   In October 2014, Chihuahtha Compton even e-mailed Plaintiffs Ken Rice, Lucas Cabrera and Romona Adams Prime's company logo and directed them to, "Please copy and paste it on your invoices going forward."  Prime paid both its adjusters and the Site Managers on a biweekly basis (every other Friday), and thus, the Site Managers had the same payroll cycle as the adjusters that were properly classified as employees.  And Defendants granted the Site Managers access to the same website/online portal to view their paystubs as the adjusters that were properly classified as employees.  On November 11, 2014, December 5, 2014, and January 6, 2015, Chihuahtha Compton e-mailed her CPA, Kyana Martin, regarding the subject of "Management Payroll," listing the then Site Managers' (including Adams, Jones, Shumate, Rice and Cabrera in November 2014, Adams, Shumate and Jones in December 2014, and Adams, Shumate, Jones, Gaona, Cabrera in January 2015) rates "per day."

Further, both Plaintiffs and Defendants referred to Plaintiffs' compensation as part of a "payroll" and the checks as "paystubs" (terms typically reserved for use with respect to employees, and not true independent contractors).

Likewise, both Plaintiffs and Defendants would refer to Plaintiffs' "invoice" forms as "timesheets" (another term typically reserved for use with respect to employees, and not true independent contractors).

During the time they were misclassified as independent contractors, Defendants required Plaintiffs to complete the same documents within the new hire packet required of Defendants' employees (including the same application, authorization for background check, adjuster's agreement, and direct deposit authorization).

In June 2015, Defendants required the Site Managers to complete the same survey related to their interest in employee health benefits that they required of Prime's employees.

The FLSA provides for recovery of (and Plaintiffs have pled a right to recover) liquidated damages in an amount equal to the unpaid overtime compensation.

**INTERROGATORY NO. 3:** Have you been treated in the past three (3) years by any physician or other health care provider for any condition, illness or injury related to this lawsuit? If your answer is in the affirmative, please explain the condition for which you were treated and the doctor or other health care provider who rendered service to you for said condition and/or ailment.

==**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:**== Plaintiff objects that this request seeks matter that is not relevant to Plaintiff's claim or Defendants' defenses and that the request is not proportional to the needs of the case considering the importance (i.e., none) of the discovery in resolving the issues.  FED. R. CIV. P. 26(b)(1).  Plaintiff further objects to this request

as unreasonably invading his/her right to privacy.  Subject to and without waiving the foregoing objections, Plaintiff responds:

No.

**INTERROGATORY NO. 4:** Identify any Defendant and/or any representatives of Prime Consulting Group, Inc. ("Prime"), with whom you spoke regarding this claim, when said conversations occurred, and the substance of the conversations.

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:** Plaintiff objects that this request is vague and ambiguous as to what Defendants means by "regarding this claim." Plaintiff further objects that this request is rendered vague and ambiguous by Defendants' special definition of the term "you" to mean "each Plaintiff and his or her successors, predecessors, divisions, subsidiaries, present and former officers, agents, employees, and all other persons acting on behalf of Plaintiff, their successors, predecessors, divisions, subsidiaries, present and former officers, agents, or employees." Plaintiff further objects that this request is rendered vague and ambiguous by Defendants' special definition of the term "Defendant" (to mean "the party, and where applicable, the party's agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly"), and by Defendants' reference to "Defendant and/or any representatives of Prime Consulting Group, Inc." Plaintiff also objects that this request is unduly burdensome and oppressive and seeks irrelevant and/or confidential matter to the extent it seeks a listing of all of the communications between Plaintiffs' Counsel and Defendants' Counsel.  Subject to and without waiving the foregoing objections, Plaintiff responds (with the assistance of Plaintiffs' counsel):

Plaintiffs Cicely James and Ken Rice filed this suit on September 21, 2015.  Fourteen additional Site Managers joined Ms. James and Mr. Rice in pursuing their unpaid overtime through this action on the following respective dates:  (1) Jacqueline Griffin, 9/28/15 joinder; (2) Laura Gaona, 9/28/15 joinder; (3) Barbara Anderson, 10/1/15 joinder; (4) Torrey Hicks, 10/5/15 joinder; (5) Timothy Craig Tetley, 10/5/15 joinder ; (6) G. Elyn Okumura, 10/5/15 joinder; (7) Bruce Jones, 10/7/15 joinder; (8) Marjorie Castro, 10/12/15 joinder; (9) Romona Adams, 10/12/15 joinder; (10) Lucas Cabrera, 10/16/15 joinder ; (11) Sybil Shumate, 1/13/16 joinder; (12) Gena Anders, 1/13/16 joinder; (13) Donald Anders, 1/13/16 joinder; and (14) Amber Kuhn, 2/3/16 joinder.

Plaintiffs served Defendants Prime Consulting Group, Inc., Keith Bruce, and Chihuahtha Compton with Process on September 28, 2015.  The original attorney for Defendants, Russell Wilson II, Law Office of Russell Wilson II, 1910 Pacific Ave. #15100, Dallas, Texas 75201, Tel: (469) 573-0211, russell@russellwilsonlaw.com, first contacted Plaintiffs' counsel of record on October 19, 2015 to request an extension of time to file an Answer to Plaintiffs' original Complaint.

**INTERROGATORY NO. 5:** With whom, and when, did you first discuss the prospect of making a claim against any Defendant?

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE**: Plaintiff objects to this request as seeking information protected from discovery by the attorney-client and/or attorney work product privilege and/or protected from discovery as concerted action under the National Labor Relations Act. Plaintiff further objects that this request seeks matter that is not relevant to any party's claim or defense or proportional to the needs of the case considering the importance (i.e., none) of the discovery in resolving the issues. FED. R. CIV. P. 26(b)(1).

**INTERROGATORY NO. 6:** Identify each entity for whom you have worked as an employee, contractor, or otherwise, including name and address, from January 1, 2005 to the present. State for each responsible entity: (a) The dates of the work relationship; (b) Your salary, hourly wage, compensation structure; (c) Your fringe benefits; (d) Total compensation received; (e) If the work relationship has terminated, the reason for the termination; and (f) Identify all documents which relate to the foregoing answers.

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:** Plaintiff objects that this request seeks matter that is not relevant to any party's claim or defense or proportional to the needs of the case considering the importance (i.e., none) of the discovery in resolving the issues. FED. R. CIV. P. 26(b)(1). Plaintiff further objects that this request is unduly burdensome and oppressive (particularly in view of the irrelevance of the information requested) in requesting a work history for the past 11+ years. Plaintiff further objects that this request contains several discrete subparts and not merely one interrogatory. FED. R. CIV. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."). Subject to and without waiving the foregoing objections, Plaintiff responds:

During the period of time that I worked for Defendants as a site manager, I did not work as an employee or contractor for any other company.

**INTERROGATORY NO. 7:** Please identify:
  a.  each position held and job title(s) during your employment with Prime;
  b.  the dates you held the position(s) and job title (s);
  c.  the job duties you performed in each position;
  d.  the limits on your authority or ability to use your judgment and discretion in each position and job title.
  e.  the name of the supervisor(s) you reported to in the position;
  f.  the names of any and all employees you supervised, managed or evaluated in any way in the position and job title and the employee or employee's position.

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:** Plaintiff objects that this request contains several discrete subparts and not merely one interrogatory. FED. R. CIV. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."). Plaintiff further objects that this request is unduly burdensome and oppressive in requesting "the names of any and all employees you supervised, managed or evaluated in any way in the position and job title and the employee or employee's position," and that the answer to those interrogatories may be

9

determined by examining, auditing, compiling, abstracting, or summarizing Defendants' own business records (including electronically stored information) and the burden of deriving or ascertaining the answer will be substantially *less* for Defendants than for Plaintiffs. FED. R. CIV. P. 33(d). Plaintiff also objects that this request is vague and ambiguous as to as to what Defendants means by "the limits on your authority or ability to use your judgment and discretion in each position and job title." Subject to and without waiving the foregoing objections, Plaintiff responds:

See Objections, Assertions of Privilege and Response to Interrogatory No. 2, which is incorporated herein by this reference. See also Defendants' own prior document productions for records from which the requested information may be derived.

Title: Manager
Location: Winter Haven, FL
Dates: 2014 Sept to Dec 2014
Supervisor: Keith Bruce

**INTERROGATORY NO. 8:** For any period of time during your employment with Prime that you contend you were misclassified under the Fair Labor Standards Act, identify the time period in which you claim you misclassified [*sic*] and identify all reasons, facts, communications, and documents that support your contention.

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:** Plaintiff objects that this request contains several discrete subparts and not merely one interrogatory. FED. R. CIV. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."). Plaintiff further objects to this request on the ground it seeks information protected by the attorney-client privilege and/or attorney work product doctrine by purporting to require counsel's impressions, conclusions, opinions and/or theories in asking for Plaintiff to list documents relating to specific issues in the case. Subject to and without waiving the foregoing objections, Plaintiff responds:

See Objections, Assertions of Privilege and Responses to Interrogatory Nos. 2 and 10, which are incorporated herein by this reference.

**INTERROGATORY NO. 9:** Irrespective of the Fair Labor Standards Act and whether your agreement with Prime violated the Fair Labor Standards Act, describe your agreement with Prime as to the work that you were to perform and the compensation that you were to received [*sic*]. Your description should specifically include, but not be limited to the number of hours that you were expected to work, the total amount of compensation that you were entitled to receive, and how many hours of work you had agreed to work for the compensation that you had agreed to receive.

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:** Plaintiff objects that this request contains several discrete subparts and not merely one interrogatory. FED. R. CIV. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."). Plaintiff further objects that this request is vague and ambiguous as to what Defendants means by "how many hours

of work you had agreed to work for the compensation that you had agreed to receive." Plaintiff also objects to this request to the extent it seeks information related to any period of time during Plaintiff's employment with Prime that he/she does not contend he/she was misclassified under the Fair Labor Standards Act on the ground that such request seeks matter that is not relevant to any party's claim or defense or proportional to the needs of the case considering the importance of the discovery in resolving the issues. FED. R. CIV. P. 26(b)(1). Subject to and without waiving the foregoing objections, Plaintiff responds:

      See Objections, Assertions of Privilege and Responses to Interrogatory Nos. 2 and 10, which are incorporated herein by this reference.

**INTERROGATORY NO. 10:** For each and every week that you worked for Prime Consulting Group, Inc., please state the following:

    a.  the total number of hours you worked;
    b.  the dates you worked and the precise hours you worked on each particular date;
    c.  where you recorded the hours worked, if at all;
    d.  the identity of the documents reflecting these hours worked;
    e.  the actual work you performed;
    f.  how much you were paid for the hours worked;
    g.  how your compensation was calculated;
    h.  how the amount you were paid for the hours worked differed, if at all, from your agreement with Prime;
    i.  any complaints or grievances filed by you for Prime's failure to pay for the hours identified in (a).

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:** Plaintiff objects that this request contains several discrete subparts and not merely one interrogatory. FED. R. CIV. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."). Subject to and without waiving the foregoing objections, Plaintiff responds:

      Produced as Bates James 00468 is a spreadsheet that calculates my overtime damages based on the timesheets and/or payroll records produced by Defendants to date.

      See also Objections, Assertions of Privilege and Response to Interrogatory Nos. 2 and 4, which are incorporated herein by this reference.

**INTERROGATORY NO. 11:** Please identify every person, if any, who you complained to about not receiving time- and-a-half overtime pay and state the substance of every communication with them relating to your complaint(s), including the date, location, and any witnesses to that communication.

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:** Plaintiff objects that this request contains several discrete subparts and not merely one interrogatory. FED. R. CIV. P.

33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."). Subject to and without waiving the foregoing objections, Plaintiff responds (with the assistance of Plaintiffs' counsel):

Plaintiffs Cicely James and Ken Rice filed this suit on September 21, 2015. Fourteen additional Site Managers joined Ms. James and Mr. Rice in pursuing their unpaid overtime through this action on the following respective dates: (1) Jacqueline Griffin, 9/28/15 joinder; (2) Laura Gaona, 9/28/15 joinder; (3) Barbara Anderson, 10/1/15 joinder; (4) Torrey Hicks, 10/5/15 joinder; (5) Timothy Craig Tetley, 10/5/15 joinder ; (6) G. Elyn Okumura, 10/5/15 joinder; (7) Bruce Jones, 10/7/15 joinder; (8) Marjorie Castro, 10/12/15 joinder; (9) Romona Adams, 10/12/15 joinder; (10) Lucas Cabrera, 10/16/15 joinder; (11) Sybil Shumate, 1/13/16 joinder; (12) Gena Anders, 1/13/16 joinder; (13) Donald Anders, 1/13/16 joinder; and (14) Amber Kuhn, 2/3/16 joinder.

Plaintiffs served Defendants Prime Consulting Group, Inc., Keith Bruce, and Chihuahtha Compton with Process on September 28, 2015. Plaintiffs filed a First Amended Complaint on February 24, 2016. Plaintiffs served Defendant Victor Green with Process (via Defendants current counsel of record) on March 23, 2016.

**INTERROGATORY NO. 12:** Please identify (i.e. date, method of correspondence, substance of correspondence) you took, at any time, to inquire or explain about your pay being incorrect or to otherwise put Defendants or their representatives, agents, or attorney on notice of your claims.

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:** Plaintiff objects that this request contains several discrete subparts and not merely one interrogatory. FED. R. CIV. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."). Subject to and without waiving the foregoing objections, Plaintiff responds (with the assistance of Plaintiffs' counsel):

Plaintiffs Cicely James and Ken Rice filed this suit on September 21, 2015. Fourteen additional Site Managers joined Ms. James and Mr. Rice in pursuing their unpaid overtime through this action on the following respective dates: (1) Jacqueline Griffin, 9/28/15 joinder; (2) Laura Gaona, 9/28/15 joinder; (3) Barbara Anderson, 10/1/15 joinder; (4) Torrey Hicks, 10/5/15 joinder; (5) Timothy Craig Tetley, 10/5/15 joinder; (6) G. Elyn Okumura, 10/5/15 joinder; (7) Bruce Jones, 10/7/15 joinder ; (8) Marjorie Castro, 10/12/15 joinder; (9) Romona Adams, 10/12/15 joinder; (10) Lucas Cabrera, 10/16/15 joinder; (11) Sybil Shumate, 1/13/16 joinder; (12) Gena Anders, 1/13/16 joinder ; (13) Donald Anders, 1/13/16 joinder; and (14) Amber Kuhn, 2/3/16 joinder.

Plaintiffs served Defendants Prime Consulting Group, Inc., Keith Bruce, and Chihuahtha Compton with Process on September 28, 2015. Plaintiffs filed a First Amended Complaint on February 24, 2016. Plaintiffs served Defendant Victor Green with Process (via Defendants current counsel of record) on March 23, 2016.

**INTERROGATORY NO. 13:** Please identify any all training you have received as an adjuster and state who provided that training and where.

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:** Plaintiff objects that this request seeks matter that is not relevant to any party's claim or defense or proportional to the needs of the case considering the importance (i.e., none) of the discovery in resolving the issues. FED. R. CIV. P. 26(b)(1). Plaintiff further objects that this request contains several discrete subparts and not merely one interrogatory. FED. R. CIV. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."). Plaintiff also objects that this request is unduly burdensome and oppressive (particularly in view of the irrelevance of the information requested) in requesting a lifetime history of all training ever received related to work as an adjuster. Subject to and without waiving the foregoing objections, Plaintiff responds:

During the time they were misclassified as independent contractors, Plaintiffs worked as site managers, not as adjusters, for Defendants.

**INTERROGATORY NO. 14:** In the First Amended Individual and Collection Action Complaint, you allege that "at best, the 'new management selection process' was aimed to punish, intimidate, or scare the opt-ins (and potential opt-ins) who still worked for Prime, and at worst, the process immediately seemed designed as a pretext for termination decisions against employees that had recently asserted their rights under the FLSA." State and describe exactly and in specific detail all facts and information upon which you base those allegations and specifically identify every person (listing name, business address, residence address and telephone number) who has any knowledge or information relating to said allegations and identify each document and tangible item which relates to said allegations.

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:** Plaintiff objects that this request should apply only to the four Plaintiffs who have alleged retaliation claims against Defendants; namely, Bruce Jones, Craig Tetley, Lucas Cabrera and Torrey Hicks. As applied to this Plaintiff, Plaintiff objects that this request seeks matter that is not relevant to any party's claim or defense or proportional to the needs of the case considering the importance (i.e., none) of the discovery in resolving the issues. FED. R. CIV. P. 26(b)(1). Plaintiff further objects that this request contains several discrete subparts and not merely one interrogatory. FED. R. CIV. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."). Plaintiff also objects that this request is unduly burdensome and oppressive (particularly in view of the irrelevance of the information requested as to this Plaintiff).

**INTERROGATORY NO. 15:** In the First Amended Individual and Collection Action Complaint, you allege that "Defendants tried to pry information from Plaintiffs Tetley, Hicks, Jones and Cabrera related to their participation in this lawsuit." State and describe exactly and in specific detail all facts and information upon which you base those allegations and specifically identify every person (listing name, business address, residence address and telephone number) who has

13

any knowledge or information relating to said allegations and identify each document and tangible item which relates to said allegations.

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:** Plaintiff objects that this request should apply only to the four Plaintiffs who have alleged retaliation claims against Defendants; namely, Bruce Jones, Craig Tetley, Lucas Cabrera and Torrey Hicks.  As applied to this Plaintiff, Plaintiff objects that this request seeks matter that is not relevant to any party's claim or defense or proportional to the needs of the case considering the importance (i.e., none) of the discovery in resolving the issues. FED. R. CIV. P. 26(b)(1).  Plaintiff further objects that this request contains several discrete subparts and not merely one interrogatory. FED. R. CIV. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts.").  Plaintiff also objects that this request is unduly burdensome and oppressive (particularly in view of the irrelevance of the information requested as to this Plaintiff).

**INTERROGATORY NO. 16:** If you allege that you have been subject to retaliation that is protected under the FLSA, please state all the facts relied on to support your contention that you have been retaliated against by Defendants and are thus entitled to punitive damages.

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:** Plaintiff objects that this request should apply only to the four Plaintiffs who have alleged retaliation claims against Defendants; namely, Bruce Jones, Craig Tetley, Lucas Cabrera and Torrey Hicks.  As applied to this Plaintiff, Plaintiff objects that this request seeks matter that is not relevant to any party's claim or defense or proportional to the needs of the case considering the importance (i.e., none) of the discovery in resolving the issues. FED. R. CIV. P. 26(b)(1).  Plaintiff further objects that this request contains several discrete subparts and not merely one interrogatory. FED. R. CIV. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts.").  Plaintiff also objects that this request is unduly burdensome and oppressive (particularly in view of the irrelevance of the information requested as to this Plaintiff).

**INTERROGATORY NO. 17:** Have you ever made a claim or been involved in a lawsuit other than this one? If your answer is in the affirmative, please state the style of the case, jurisdiction, type of case and ultimate disposition.

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:** Plaintiff objects that this request seeks matter that is not relevant to any party's claim or defense or proportional to the needs of the case considering the importance (i.e., none) of the discovery in resolving the issues. FED. R. CIV. P. 26(b)(1).

**INTERROGATORY NO. 18:** Have you ever been arrested by a law enforcement officer within the past ten (10) years? If your answer is in the affirmative, please explain the details surrounding the arrest, disposition of any charges and whether or not your [*sic*] served time in any penal institution.

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:** Plaintiff objects that this request seeks matter that is not relevant to any party's claim or defense or proportional to the needs of the case considering the importance (i.e., none) of the discovery in resolving the issues. FED. R. CIV. P. 26(b)(1); *see also* FED. R. EVID. 609.   Plaintiff further objects that this request is overbroad and harassing.

**INTERROGATORY NO. 19:** Please state the name, address and telephone number of all persons who have knowledge of relevant facts and the issues upon which you believe they have knowledge.

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:**   In addition to each of the sixteen (16) Plaintiffs and four (4) Defendants, the following additional persons may have knowledge of relevant facts:

1.   **State Farm Mutual Automobile Insurance Company**

2.   **Rose Greer**
     Tel:  214-244-4164
     Msrg2000@aol.com

3.   **Paige Whiddon, SHRM-CP**
     **Former Employee / Termination Date 10/12/15**
     Human Resources
     Prime Consulting Group
     1006 Thompson Rd., Suite 200
     Richmond, Texas 77469
     Tel:  281-573-0944
     Fax:  281-738-5848
     Cell: 832-679-6811
     pwhiddon@primeconsultinggroup.com

4.   **Kyana H. Martin, CPA**
     Billings & Martin, LLP
     1715 Bonnie Lea Lane
     Fresno, Texas 77545
     Tel:  281-431-5520
     kmartin@bmllp-cpa.com

5.   **Shauntel Huerell**
     Administrative Assistant
     Prime Consulting Group
     1006 Thompson Rd., Suite 200
     Richmond, Texas 77469
     Tel:  281-573-0944
     Fax:  281-738-5848
     info@primeconsultinggroup.com

15

      6.      **Jarnae A. Gregory AIC, CPCU**
              Claim Manager
              Prime Consulting Group
              Tel:  314-374-8706
              jarnae.a.gregory.kg2x@statefarm.com

**INTERROGATORY NO. 20:** State the full amount of money you seek and describe the manner in which the amount was calculated. Your description should include each element of damage or component of recovery that you seek, the amount sought for each element or component, the manner in which each element or component of the calculation was determined, and should identify the source of each number used in the calculation.

**OBJECTIONS, ASSERTIONS OF PRIVILEGE AND RESPONSE:** Plaintiff objects that this request contains several discrete subparts and not merely one interrogatory. FED. R. CIV. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."). Subject to and without waiving the foregoing objections, Plaintiff responds:

Produced as Bates James 00468 is a spreadsheet that calculates my overtime damages based on the timesheets and/or payroll records produced by Defendants to date. Also, see Objections, Assertions of Privilege and Response to Interrogatory No. 2, which is incorporated herein by this reference, related to Plaintiff's right to recover liquidated (i.e., double) damages. Plaintiffs are also entitled to recover their attorneys' fees and costs, which will be totaled after trial.

16